IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ALEJANDRO MEDINA AND<br>SYLVIA AGUILAR | §<br>§<br>§<br>§ | |
| VS. | §<br>§ | C.A. NO. _____ |
| VANDERBILT MORTGAGE AND<br>FINANCE, INC., CLAYTON HOMES, INC.;<br>AND CMH HOMES, INC. | §<br>§<br>§ | JURY DEMAND |

**PLAINTIFFS' ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE OF SAID COURT:

COME NOW, ALEJANDRO MEDINA and SYLVIA AGUILAR, Plaintiffs, herein, complaining of Vanderbilt Mortgage and Finance, Inc., (hereinafter referred to as "VMF"), Clayton Homes, Inc., (hereinafter referred to as "CHI"), and CMH Homes, Inc., (hereinafter referred to as "CMH"), Defendants herein, and for cause of action would show as follows:

**I.
NATURE OF CASE**

1. The Plaintiffs, Alejandro Medina and Sylvia Aguilar and CHI and CMH entered into a mobile home purchase and financing contract ("Contract") on or about March 25, 2002. CHI and CMH assigned the Contract to VMF. VMF provided the financing for the mobile home. On or about October 24, 2005, VMF, CHI and CMH filed a Deed of Trust Release pertaining to the Contract. (See Deed of Trust Releases attached hereto as Exhibit "A"). Specifically, VMH has filed sworn documentation with the Jim Wells County Clerk asserting that the Contract is paid in full:

> "[F]or a valuable consideration in hand paid, the said **VANDERBILT MORTGAGE AND FINANCE, INC.,** does hereby **RELEASE** the lien of said deed of trust and/or mortgage."

*Id.* (emphasis in original).  The Deed Release is signed and sworn to by VMF's Document Services Manager, Michael Shelton, who executed the release under the authority of the Board of Directors.  The signing and filing of the Release with the Jim Wells County Clerk constitutes a judicial admission that VMF has released and extinguished the Plaintiffs', Alejandro Medina and Sylvia Aguilar, mortgage obligation. VMF, CHI and CMH failed to disclose to Plaintiffs the filing of this secret release.

2.      On or about October 24, 2005, VMF, CHI and CMH filed a Mechanic's Lien Release with the Jim Wells County Clerk. (See Mechanics Lien Releases attached hereto [Exhibit "B"](#)).  Specifically, CMH has filed sworn documentation with the Jim Wells County Clerk asserting that the Contract is paid in full:

> "[F]or a valuable consideration in hand paid, the said, **CMH HOMES, INC.**, does hereby release the lien of said **MECHANICS LIEN CONTRACT** and has been paid in full."

Id. (emphasis in original).  The Mechanics Lien Release is signed and sworn to by CMH's Secretary, Hugh T. Statum, who executed the release under the authority of the Board of Directors.  CMH is an affiliate of VMF.  As such, CMH's representations to the Jim Wells County Clerk are binding upon VMF.  The signing and filing of the Mechanics Lien Release with the Jim Wells County Clerk constitutes a judicial admission that VMF has released and extinguished Plaintiffs', Alejandro Medina and Sylvia Aguilar, contract.

3.      VMF, CHI and CMH never notified the Plaintiffs, Alejandro Medina and Sylvia Aguilar, that these releases had been filed.  Instead, the Defendants concealed this fact from the Plaintiffs and continued to collect payments from the Plaintiffs.  On August 21, 2009, VMF filed suit against Plaintiffs to foreclose on the mobile home that had been

"paid in full." Plaintiffs would show the court and jury that this conduct was not limited to the Plaintiffs in this case. Instead, Defendants committed these egregious and fraudulent acts upon thousands of people in the Texas area.

4. Beginning in the 2003 and concluding in 2005, VMF, CHI, and CMH, were sued multiple times for forgery and notary fraud. Evidence in this litigation revealed that the Defendants participated in a scheme by which their sales associates were forging signatures and committing notary fraud on thousands of transactions. In fact, Defendants not only forged the signature of Christie Medina to both the Deed of Trust and Mechanics Lien Contract that are involved in this case but committed notary fraud in fraudulently "notarizing" these documents. When these Defendants learned that Ms. Medina lives in Arizona and recognized the impossibility of their employees "notarizing" her signature, they agreed to pay Ms. Medina a confidential sum of money.

5. In other cases, the Defendants learned that dead people's signatures were forged and determined that their employees were somehow notarizing dead people signing documents. When the evidence mounted against them that this fraud and forgery was widespread, the Defendants entered into confidential settlements with hundreds of people. At the time of these settlements, the Defendants recognized that there were thousands of more victims of this fraud and forgery. Rather than notifying their customers that they had been victims of this fraud and forgery, these Defendants created a scheme in which thousands of Releases were filed in more than a dozen counties in Texas releasing the debt as being "paid in full." In furtherance of this scheme, the Defendants intentionally withheld and intentionally failed to disclose to

these victims of fraud and forgery the fact that they had released the debt as "paid in full."

6. Plaintiffs would show the court that these Defendants filed massive amounts of Releases, all of which state that the installment contract is "paid in full" and none of which were provided to the victims of this fraud and forgery in Aransas County, Atascosa County, Bee County, Bell County, Brooks County, Brown County, Calhoun County, Cameron County, Dimmit County, Duval County, Ector County, Goliad County, Gonzales County, Jackson County, Jim Hogg County, Jim Wells County, Karnes County, Kerr County, Kleberg County, Live Oak County, Nueces County, Refugio County, San Patricio County, Victoria County, and Wharton County.

7. In addition to filing these mass secret releases indicating the debt was paid in full, incredibly, these Defendants continued to collect payments for the debt that is no longer due. In an effort to cover up the known fraud and forgery and in an effort to continue to collect millions in mortgage payments, the filing of these releases was done in secret in an attempt to conceal their criminal and fraudulent enterprise. The filing of these secret mass releases was done through a criminal and fraudulent enterprise created to cover up fraud and to alter government documents that were filed in numerous counties in Texas. Incredibly, these Defendants continue to this day to conceal this organized criminal activity in claiming that they do not have one single memorandum, letter, note or document of any kind that describes why they filed thousands of releases indicating the debt was paid in full and did not disclose such filing to the customer or land owner. Instead, these Defendants contend by way of a declaration of Tom Hodges that this organized criminal activity was controlled and directed by its General Counsel, Tom Hodges. In fact, according to the declaration, Mr.

Hodges provided all of the Clayton companies with advice on carrying out this criminal enterprise.

8. Even more egregious is the fact that these loans were packaged up and sold to Fannie Mae for hundreds of millions of dollars without disclosing the fraud and forgery involved in the transactions and, without ever disclosing that the collateral used to secure the loans had been released. Interestingly, Berkshire Hathaway, the parent company of the Defendants, owned a percentage of Fannie Mae when they purchased these fraudulent loans from Defendants. As the parent company, Berkshire Hathaway knew or should have known that Fannie Mae paid hundreds of millions of dollars for worthless unsecured loans. Berkshire Hathaway, however, sold its interest in Fannie Mae before the demise of Fannie Mae. Plaintiffs contend that Berkshire Hathaway knew the loans sold by Defendants and owned by Fannie Mae were based on fraudulent transactions and, knew the loans were no longer secured by real property. Berkshire Hathaway failed to disclose this knowledge to Fannie Mae when it chose to cash out of Fannie Mae for an enormous profit.

9. In sum, these Plaintiffs are just two of thousands of people who fell prey to the organized and illegal enterprise created by these Defendants at the direction of their General Counsel to commit fraud, cover up fraud, and then commit fraud again.

## II.
## JURISDICTION AND VENUE

10. This Court has jurisdiction over this suit pursuant to 28 U.S.C. § 1332(a)(1) because the Plaintiffs and the Defendants are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and cost.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the property at issue is situated within this District and Defendants' conduct occurred within this District.

### III.
### THE PARTIES

12.     Plaintiff, Alejandro Medina is a resident of El Mirage, Arizona, and brings suit herein in his individual capacity.

13.     Plaintiff, Sylvia Aguilar is a resident of Orange Grove, Texas, and brings suit herein in her individual capacity.

14.     Defendant, Clayton Homes, Inc., a wholly owned subsidiary of Berkshire Hathaway, Inc. and the successor corporation of Clayton Homes, Inc., a Tennessee corporation, is a foreign corporation, incorporated in the state of Delaware, doing business, engaging in business and transacting business in the state of Texas, with business offices throughout the state of Texas and having its principal place of business in the state of Texas in Comal County, and may be served pursuant to the Texas Long-Arm Statute, Texas Civil Practice & Remedies Code Section 17.041-.045, through the Secretary of State of Texas at Wilmington Trust SP Services, Inc., 1105 N. Market Street, Suite 1300, Wilmington, Delaware 19801.

15.     Defendant, CMH Homes, Inc., is foreign corporation, incorporated in the state of Tennessee, doing business, engaging in business and transacting business in the state of Texas, and may be served with process by serving its Texas registered agent for service of process, C.T. Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

16. Defendant, Vanderbilt Mortgage and Finance, Inc., is a foreign corporation, incorporated in the state of Tennessee, doing business, engaging in business and transacting business in the state of Texas, and may be served with process by serving its Texas registered agent for service of process, C.T. Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

## IV.
## CONDITIONS PRECEDENT

17. All conditions precedent have been performed or have occurred.

## V.
## CAUSES OF ACTION

**A.** **Common Law Unfair Debt Collection**

18. Defendants' actions constitute unfair debt collection under the common law of Texas. Specifically, Defendants sought to collect and foreclose upon the Contract against the Plaintiffs even though the Defendants wholly released the Plaintiffs' obligations. Because no valid debt existed for Defendants to collect, and because Defendants intentionally concealed the Deed of Trust Releases and the Mechanic's Lien Releases from the Plaintiffs, Defendants' actions are intentional, harassing, unreasonable, cruel, malicious, reckless, and negligent.

19. Defendants' actions caused the Plaintiffs to suffer physical suffering and mental anguish. These damages sustained by the Plaintiffs were reasonably foreseeable by Defendants.

20. Plaintiffs are also entitled to exemplary damages against Defendants. Defendants' concealment of the Deed Release was intentional and malicious.

Furthermore, Defendants' debt collection and foreclosure efforts subsequent to the filing of the Deed Release and Mechanics Lien Release, was done intentionally and maliciously.

**B.     Texas Debt Collection Practices Act and Deceptive Trade Practices Act**

21.    Defendants' actions violate the Texas Debt Collection Practices Act ("DCPA"). Under the DCPA, the debt at issue in this case is a "consumer debt", and Defendants are a "debt collector". Defendants misrepresented the character, extent and amount of the alleged debt owed by the Plaintiffs under the Contract. Specifically Defendants released all debts under the Contract, but failed to inform the Plaintiffs of the releases. Defendants continued to collect payments from the Plaintiffs, attempted to collect on alleged payments due using threats of eviction and foreclosure, and instituted foreclosure proceedings. Defendants knowingly, intentionally, recklessly, maliciously and negligently committed these egregious misrepresentations and unfair debt collection practices in violation of the DCPA.

22.    Defendants' actions caused the Plaintiffs to suffer physical suffering and mental anguish. These damages sustained by the Plaintiffs were reasonably foreseeable by Defendants.

23.    The Plaintiffs are also entitled to exemplary damages against Defendants. Defendants' concealment of the Deed of Trust Release and Mechanic's Lien Release was intentional and malicious. Furthermore, Defendants' debt collection and foreclosure efforts subsequent to the filing of the Deed Release and Mechanic's Lien Release was done intentionally and maliciously.

24. Defendants' violations of the DCPA also constitute violations of the Texas Deceptive Trade Practices Act. Tex. Fin. Code § 392.404(a). Furthermore, because the Defendants knowingly and intentionally violated the DCPA, the Plaintiffs are entitled to treble damages.

25. The Plaintiffs are entitled to statutorily mandated damages against Defendants. *Id.* at § 392.403.

26. Defendants' conduct also warrants exemplary damages because the Defendants acted maliciously, intentionally, and knowingly in concealing the Deed Release and Mechanic's Lien Release, accepting payments after the Deed Release and Mechanic's Lien Release were filed with the court, seeking to collect on the Contract after the Deed Release and Mechanic's Lien Release were filed with the court, and seeking foreclosure on an invalid debt. The Defendants authorized and encouraged its employees, agents and affiliates to carry out this malicious and egregious course of action against the Plaintiffs.

**C.    Fraud**

27. The Defendants' actions also constitute fraud. Specifically, (1) the Defendants materially misrepresented the amount of the alleged debt due under the Contract; (2) the Defendants knew that the alleged debt under the Contract was released; (3) the Defendants intended to defraud, trick, and mislead the Plaintiffs into believing that they were liable for the alleged debt under the Contract; (4) the Plaintiffs relied on the Defendants' misrepresentation to their detriment; and (5) the Plaintiffs suffered damages.

**D.     R.I.C.O.**

28.     Plaintiffs restate and re-allege the above paragraphs as if fully set forth herein.

29.     Plaintiffs are "persons" within the meaning of 18 U.S.C. § 1961(3) and § 1964(c).

30.     Defendants, VMF, CHI, and CMH, constitute an enterprise for purposes of 18 U.S.C. § 1961(4).

31.     Alternately, Defendants with their members formed an association-in-fact for the purpose of depriving Plaintiffs of their property. This association is an "enterprise" within the meaning of 18 U.S.C. § 1962(c).

32.     This enterprise was engaged in, and its activities affected, interstate commerce within the meaning of 18 U.S.C. § 1962(c).

33.     Defendants, including persons employed by or associated with the enterprise, specifically the Defendants, and its members, conducted or participated, directly or indirectly, in the operation and/or management of the enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) and § 1962(c).

34.     Defendants along with the enterprise, engaged in "racketeering activity" within the meaning of 18 U.S.C. § 1961(1) by engaging in the acts set forth above. The acts set forth above constitute violations of 18 U.S.C. § 1028, 1341, 1343, 1344, 1543, and 1956 as set forth more fully in paragraphs, 1, 2, 3, 4, 5, 6, 7, 8, and 9 of this Complaint. Defendants each committed and/or aided or abetted the commission of two or more of these acts of racketeering activity within the last ten (10) years.

35.     Defendants or their agents have caused or conspired to cause the transmission of "forged" documents through the mail and/or by wire via facsimile.  Such actions constituted:

    a.   A scheme to defraud conducted through the mails and/or over wire transmissions;

    b.   With the intent to defraud the Plaintiffs landowners, the mobile home purchasers and the local and state government offices where these "forged" documents were ultimately filed; and

    c.   Defendants did in fact mail and/or transmit by wire materials in furtherance of this scheme.

36.     Defendants or its agents have caused or conspired to cause the transmission of Deed of Trust Releases and Mechanic's Lien Releases through the mail and/or by wire via facsimile that failed to disclose to Plaintiffs that a mortgage obligation had been released.  Such actions constituted:

    a.   A scheme to defraud conducted through the mails and/or over wire transmissions;

    b.   With the intent to defraud the purchasers, Plaintiffs; and

    c.   Defendants did in fact mail and/or transmit by wire materials in furtherance of this scheme.

37.     Defendants or their agents have engaged or conspired to engage in money laundering by investing the proceeds of these activities into the enterprise such that:

    a.   Defendants knowing that the money involved in these financial transactions represented the proceeds of some form of unlawful activity, conducted or attempted to conduct financial transactions involving the proceeds from the unlawful activities of the Defendants by paying many of the co-conspirators huge bonuses and investing the rest of the proceeds of these unlawful activities in their enterprise;

    b.   With the intent to promote the carrying out of these unlawful activities.

38.     The acts of racketeering activity referred to in paragraphs 1, 2, 3, 4, 5, 6, 7, 8, and 9 of this Complaint constitute a pattern of racketeering within the meaning of 18 U.S.C. sec 1961(5).  The acts were related to each other by virtue of common participants, a common class of victims, a common method of commission, and the common purpose and common result of depriving the Plaintiffs of their property and enriching the Defendant, VMF.  The Defendant's scheme commenced as early as January of 1999.

39.     The Plaintiffs were injured in their property as a result of these RICO violations.

40.     As a result of their misconduct, Defendants are liable to Plaintiffs for their losses in an amount to be determined at trial.

41.     Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover threefold the damages sustained, plus costs including attorney's fees, from the Defendants.

42.     Plaintiffs would show the Court and jury that the criminal enterprise was created, controlled and directed by Tom Hodges, General Counsel of the Clayton Homes companies.  According to documents filed, every decision related to the filing of these mass secret releases were done under the direction and control of Tom Hodges.  Plaintiffs would submit that it's the very advice, instruction, and guidance that the Clayton companies are claiming to be privileged that constitute R.I.C.O. activity.

43.     Plaintiffs would further show that these Defendants through a criminal enterprise, packaged up and sold these sub-prime notes to Fannie Mae and, in doing so, failed to disclose and intentionally withheld information known to them of the forgeries and fraud contained in the transactions, and knowingly failed to disclose to Fannie Mae that they had filed these mass releases that pertain to the notes that Fannie Mae

purchased.  Such conduct was committed intentionally to deceive Fannie Mae and constitutes a criminal activity for which Plaintiffs now sue.

# VI.
# DAMAGES

44.     Plaintiffs request that they obtain against Defendants a judgment in a sum within the jurisdictional limits of the court, treble damages, exemplary damages, pre-judgment and post-judgment interest, attorney's fees, and costs of suit.

# VII.
# JURY DEMAND

45.     Plaintiffs request a trial by jury for all issues of fact.  A jury fee has been paid timely and properly.

# PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer herein, that this cause be set down for trial before a jury, and that Plaintiffs recover judgment of and from the Defendants for their actual and exemplary damages in such amount as the evidence may show and the jury may determine to be proper, together with pre-judgment interest, post-judgment interest, costs of suit, and such other and further relief to which they may show themselves to be justly entitled.

Respectfully submitted,

s/ David L. Rumley
David L. Rumley
ATTORNEY-IN-CHARGE
State Bar No. 00791581
Federal I.D. No. 18120

OF COUNSEL:

WIGINGTON RUMLEY DUNN, LLP
800 N. Shoreline
14th Floor, South Tower
Corpus Christi, Texas  78401
Telephone:   (361) 885-7500
Facsimile:    (361) 885-0487

AND

Mr. Baldemar Gutierrez
State Bar No. 08640500
Federal I.D. No.  5910
THE GUTIERREZ LAW FIRM, INC.
700 East 3rd Street
Alice, TX  78332
Telephone:   (361) 664-7377
Facsimile:    (361) 664-7245